# In the Iowa Supreme Court

No. 25–0011

Submitted September 16, 2025—Filed January 30, 2026

**State Public Defender,**

Plaintiff,

vs.

**Iowa District Court for Scott County,**

Defendant.

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, district associate judge.

The State Public Defender on certiorari review challenges a district court's orders appointing a local public defender and denying motions to withdraw in six criminal cases. **Writ Sustained.**

Oxley, J., delivered the opinion of the court, in which McDonald, McDermott, and May, JJ., joined. Waterman, J., filed a dissenting opinion, in which Christensen, C.J., and Mansfield, J., joined. Mansfield, J., filed a dissenting opinion, in which Christensen, C.J., and Waterman, J., joined.

Jeff Wright, State Public Defender, and Jacob Mason (argued), Assistant State Public Defender, for plaintiff.

Brenna Bird, Attorney General; Eric Wessan (argued), Solicitor General; Patrick C. Valencia, Deputy Solicitor General; and William C. Admussen (until withdrawal), Assistant Solicitor General, for defendant.

**Oxley, Justice.**

Our state, like many across the nation, is facing an indigent defense crisis. But this legal dispute over the powers and duties of local public defenders in Iowa Code section 13B.9 (2024) is not the vehicle to fix the complex policy matters in that strained system. Our review is limited to determining what role, if any, a district court plays in deciding whether a local public defender is facing a temporary overload of cases that requires it to return new court appointments to represent indigent defendants back to the court.

This proceeding involves six unrelated criminal cases pending in Scott County. In each case, the Davenport local public defender's office (Davenport PD) sought to withdraw from representing the indicted indigent defendant based on a temporary overload of cases, as it is directed to do under Iowa Code section 13B.9(4)(*a*). While the Iowa District Court for Scott County appropriately appointed the Davenport PD to represent the indigent defendants initially, *see* Iowa Code § 13B.9(1), a local public defender is mandated that it "shall return the case to the court" in two circumstances: "[i]f a conflict of interest arises or if the local public defender is unable to handle a case because of a temporary overload of cases." *Id.* § 13B.9(4)(*a*).

Miguel Puentes, the Davenport Public Defender, filed a motion in each case stating that "after consideration of all applicable factors including the number of attorneys in the office and caseloads, [the office] has determined they are still ethically unable to handle this case." The district court rejected the motion, directing Puentes to be attached to each case's docket when no one from his office made an appearance as directed by the court. Not so much because the district court disbelieved Puentes's representations about the workload of his office, but because the district court had no one else to appoint.

The State Public Defender brought this certiorari proceeding to challenge the district court's refusal to allow the local public defender to withdraw from the six cases. The case requires us to determine the roles between the local public defender and the court in determining whether the statutory condition precedent of "a temporary overload of cases" is met. *Id.* The State Public Defender argues that the local public defender has sole authority to make that determination. On behalf of the district court, the attorney general argues that the court has a role, such that the district court acted within its discretion in rejecting the local public defender's attempt to return these cases when the court had no one else to appoint.

We agree with the attorney general that the district court has a role in ensuring the condition precedent for returning a case is met. But the district court's role is limited when the condition is the local public defender's inability "to handle a case because of a temporary overload of cases." *Id.* Unless the court has reason to believe that the local public defender misrepresented its office's caseload, district courts should be highly deferential to whether a temporary overload has been shown to allow the case to be returned to the district court. Here, Puentes's representations satisfied his burden to establish the precondition to returning each case. The district court acted beyond its authority when it refused to accept the representation and allow the Davenport PD out of the six cases. The writ is therefore sustained.

## I. Indigent Public Defense in Iowa.

It is a cornerstone of constitutional jurisprudence that indigent defendants charged with crimes punishable by imprisonment are entitled to a state-provided defense lawyer. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); *Hall v. Washington Co.*, 2 Greene 473, 478–79 (Iowa 1850). The right to a

court-appointed attorney is also codified in the Iowa Code. *See* Iowa Code § 815.9(1) (establishing guidelines for determining whether a defendant is indigent and therefore "entitled to an attorney appointed by the court"). Traditionally, the obligation to represent indigent defendants was seen as one shared by the bar. *See, e.g.*, *Soldat v. Iowa Dist. Ct. for Emmet Cnty.*, 283 N.W.2d 497, 500 (Iowa 1979) (en banc) ("Lawyers generally should also be more willing to accept court appointments, even at some inconvenience and financial sacrifice to themselves, so that the profession may better discharge what has traditionally been the lawyer's obligation to assist courts in the administration of justice."). Yet, as we recognized in *Soldat v. Iowa District Court for Emmet County*, by the late 1970s "the burden of representing indigents [had fallen] upon a small segment of the bar, rather than all lawyers, as was originally intended." *Id.* This was not an Iowa-centric problem, but one that states across the country were experiencing. *See, e.g.*, Cara H. Drinan, *The Third Generation of Indigent Defense Litigation*, 33 N.Y.U. Rev. L. & Soc. Change 427, 432–43 (2009) (discussing lawsuits across the nation seeking systemic reform of indigent defense around the same time).

In 1981, the Iowa General Assembly established the position of state public defender (SPD) within the executive branch to meet the state's obligation to provide counsel to indigent defendants. *See* 1981 Iowa Acts ch. 23, § 2 (codified as amended at Iowa Code § 13B.2 (2024)). The Governor appoints the "state public defender, who shall serve at the pleasure of the governor, subject to confirmation." Iowa Code § 13B.2. As relevant here, the SPD is tasked with "coordinat[ing] the provision of legal representation to all indigents under arrest or charged with a crime who face the possibility of imprisonment under the applicable criminal statute or ordinance." *Id.* § 13B.4(1)(*a*). Since 1988, the SPD

has been statutorily authorized to establish (or abolish) local public defender offices depending on the potential number of cases where a local public defender would be involved, the population of the area to be served, the willingness of local private attorneys to handle such cases, and other factors the SPD deems important. *Id.* § 13B.8(1). The SPD is responsible for staffing and equipping each local public defender office with funds appropriated by the general assembly. *See id.* § 13B.8(2)–(4). The Davenport PD is one such local public defender office.

The SPD is required to provide notice to the clerk of court "in each county served by a public defender designating which public defender office shall receive notice of appointment of cases." *Id.* § 13B.4(2). The SPD may also identify designees to be appointed in place of the local public defender office. *Id.* Designees may be individual Iowa lawyers, nonprofit organizations employing Iowa lawyers, or another local public defender office. *Id.*; *see also id.* § 13B.9(4)(*a*) ("As used in this subsection, *'successor designee'* may include another local public defender office . . . .").

The SPD may also contract with Iowa attorneys or nonprofit organizations to provide legal services to indigent defendants. *Id.* § 13B.4(3). The SPD "establish[es] fee limitations for particular categories of cases." *Id.* § 13B.4(4)(*a*). The general assembly sets the hourly rates paid to court-appointed indigent defense attorneys who are not under a section 13B.4 contract with the SPD. *See id.* § 815.7(2)–(9). The current rates are "eighty-eight dollars per hour for class 'A' felonies, eighty-three dollars per hour for class 'B' felonies, and seventy-eight dollars per hour for all other cases." *Id.* § 815.7(10) (2026).

Despite this statutory scheme, Iowa has experienced an indigent defense crisis for some time based on a shortage of attorneys available to represent indigent defendants—both inside and outside of the state public defender

system. And it is getting worse. According to the Legislative Services Agency, the number of private attorneys willing to contract with the SPD over the last decade has cut in half—from 1,018 in 2015 to approximately 500 in 2024. Legis. Servs. Agency, Fiscal Servs. Div., *Public Defenders and Contract Attorneys* 1 (2025), https://www.legis.iowa.gov/docs/publications/FTNO/1463204.pdf [https://perma.cc/4V5B-6QK5].

But this case is not the vehicle for fixing that shortage. Rather, as in all cases before our court, we address only the specific dispute before us. *See State v. Thompson*, 954 N.W.2d 402, 410–11 (Iowa 2021) (recognizing that the judicial power is the power to construe and interpret the laws within the context of applying them to decide a specific controversy); *Planned Parenthood of the Heartland v. Reynolds ex rel. State*, 915 N.W.2d 206, 212 (Iowa 2018) ("Our constitution tasks . . . the judiciary with construing and applying the laws to cases brought before the courts."), *overruled on other grounds by*, *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 975 N.W.2d 710 (Iowa 2022). Here, the dispute is limited to the Davenport PD's attempt to return to the court its appointed representation in six specific cases based on a temporary overload and the district court's refusal to accept the return of these six cases.

## II. Factual Background and Proceedings.

This original certiorari proceeding involves six different, unrelated criminal cases with nearly identical procedural facts.[1] The defendants were each charged

---

[1]Each of the six defendants was charged with a serious misdemeanor and faced potential jail time: (1) John H. Shepherd III was charged with "possession of methamphetamine, first offense"; (2) James A. Doty Jr. was charged with "possession of marijuana, first offense" and "person ineligible to carry dangerous weapons"; (3) Jamie A. Spahr was charged with "domestic abuse assault causing bodily injury or mental illness, first offense"' (4) Stephon L. Glass was charged with "possession of a controlled substance, second offense—marijuana only" and "person ineligible to carry dangerous weapons"; (5) Lashayla S. Montgomery was charged with

with committing a serious misdemeanor through criminal complaints filed close in time in 2024: one each on September 26, October 19, and October 29, and three criminal complaints filed on October 23. Each defendant requested court-appointed counsel based on indigency, and the district court appointed the Davenport PD.

In the first case, filed on September 26, an attorney from the Davenport PD filed an appearance on October 1. But it was quickly followed by a motion to withdraw two days later, stating: "The State Public Defender is unable to continue representing Defendant due to a conflict of interest as follows," with an "X" marked next to "Temporary overload." The prayer for relief stated: "WHEREFORE, we respectfully ask that this motion be granted." The motion was signed by Miguel Puentes, the chief public defender for the Davenport PD. On October 21, a district associate judge responded to the motion in an order stating: "The Court determines the motion shall be denied without prejudice as the local public defender office is fully staffed at this time."

In each of the other cases, the Davenport PD filed a motion to withdraw soon after the respective order appointing it—the same or the next day. Each motion included the following statement: "In accordance with Iowa Code Section 13B.9(4), the public defender is returning the case to the court." Puentes signed each of these motions.

The same district associate judge who denied the motion in the first case also denied the motions in the subsequent cases using verbatim orders:

> To date, the Court has utilized all available contract attorneys to grant motions by the state public defender's office on conflict cases, co-defendant cases, and to the extent possible, "temporary overload" cases. The Court notes that the state public defender's second

---

"driving while license denied or revoked"; and (6) Jacionna L. Stowers was charged with "possession of a controlled substance—marijuana, first offense."

> motion filed in some cases does not state any reason for the withdrawal.
>
> The local state public defender's office recently became fully staffed. The Court is unaware of the caseload of the public defender's office, per attorney, prior to . . . being fully staffed as compared to the current caseload now that full staffing has occurred. The Court does not know the ideal caseload per attorney nor the maximum caseload per attorney. The Court is unaware of the methodology for arriving at the ideal or maximum caseload. The court is appointing and will continue to appoint contract and non-contract private attorneys whenever they are available or willing to take court appointed cases. However, there remains insufficient attorneys available to take appointments for well over a year and this still exists today. Accordingly, due to a lack of information provided by the movant, and lack of attorneys to take the cases if the motions are granted, the Court cannot make a determination that the movant is unable to represent the defendant and the motion is denied.

Puentes promptly filed a "second motion to withdraw" in all six cases, without requesting a hearing. The motions again stated that the Davenport PD was "returning the case[s] to the court." Although it did not expressly address the district court's reference to the Davenport PD recently becoming fully staffed, each motion stated: "The public defender is in receipt of the court's order denying their first motion to withdraw and after consideration of all applicable factors *including the number of attorneys in the office and caseloads*, has determined they are still ethically unable to handle this case." (Emphasis added.) No affidavit or other evidence was provided regarding the caseload of any of the attorneys in the local office.

On November 6, the district court again denied the motion in all six cases in an order stating: "The first motion was denied and the order specifically says if the Public Defender wishes to have the order reconsidered a hearing is to be scheduled. Until a hearing is scheduled and heard, the motion remains denied."

The Davenport PD did not request a hearing or otherwise respond to the district court's second set of orders.

A month passed without any action taken by the Davenport PD to represent the six indigent defendants. On December 6, the district court entered an order in all six cases expressing its frustration with the Davenport PD's inaction:

> A few weeks ago, the local public defender refused to sign the written arraignment. They refuse to advise these clients or inform these clients about their options and legal rights at arraignment. Some of these defendants had not been provided their Trial Information prior to signing a written arraignment. The only notice the clients receive for their PTC is from the court. None is provided from the local public defender's office. . . .
>
> The Court is dum[b]founded by the failure of the local office to provide basic required representation of their clients when the State Public Defender has a state-wide staff to assist the local office with the overload, and the State Public Defender himself has the statutory duty to provide indigent defendants with appropriate representation.
>
> . . . .
>
> An appearance shall be entered and a signature provided within 10 working days. That attorney will be responsible for representing the Defendant unless or until a withdrawal has been granted. If an entry of appearance is not filed in this matter as required by this order, the Court will appoint the Chief of the Local Public Defender's Office personally. The Chief is required to appear on the case, or may assign the case to another staff attorney, or other designated attorney identified by The S[t]ate Public Defender, as the court has no attorneys available to appoint.

The Davenport PD filed no response to this order and took no action to represent the six indigent defendants. On December 19, the district court entered its fourth order in all six cases stating, "[A]ttorney Miguel Puentes is responsible for this case. As Chief Public Defender in the Davenport office, he certainly may designate a staff attorney to file an appearance in his stead."

The next day, the Davenport PD made a filing titled "Notice of Return pursuant to Iowa Code Section 13B.9(4)(*a*)" in each of the six cases. No affidavit or other evidence or information about workloads was submitted with any of the notices. Each notice stated:

> [T]he Office of the State Public Defender . . . hereby notices the Court that due to a temporary overload, this case is returned to the Court. As the Court is aware, this does not burden our Office with a requirement to have the matter heard or proof shown, rather it directs the Court to act pursuant to this section.

On December 31, the district court entered its fifth order in each case reiterating that no contract attorneys were available, the Davenport PD's motions to withdraw had been denied, and the "notice fails to provide any additional basis to modify any of the Court's previous orders."

Later the same day, the State Public Defender filed a petition for a writ of certiorari with our court. He argued that the Iowa District Court for Scott County acted illegally by denying the Davenport PD's motions to return or withdraw from these six cases due to a temporary overload. He asks us to direct the district court to enter an order withdrawing the Davenport PD and appointing replacement counsel pursuant to Iowa Code section 815.10(3). He also requested a stay of the district court orders. We granted the unresisted application for a writ of certiorari but denied the request for a stay.[2] We retained the writ of certiorari and sustain it for the reasons below.

**III. Analysis.**

We first reject the attorney general's arguments that the State Public Defender's petition for a writ of certiorari was untimely and that he failed to preserve error for our review. The State Public Defender's petition was timely

---

[2]None of the six defendants are incarcerated on these charges. They were released from custody on bond or on their personal recognizance pending trial.

filed within thirty days of the district court's December orders, and we have discretion to review the "inextricably intertwined" earlier rulings denying the Davenport PD's motions to withdraw. *Hammer v. Branstad*, 463 N.W.2d 86, 89 (Iowa 1990).

Turning to the merits, we agree with the district court that it has a role to play when a local public defender "returns" a case to which it has been appointed based on an assertion that its office has a "temporary overload" within the meaning of Iowa Code section 13B.9(4)(*a*). But we disagree about the extent of that role. Under the facts of this case, the Davenport PD's representation in the second motion to withdraw, filed in each of the six underlying cases, satisfied its burden to establish that the local office had a temporary overload to support returning the six cases. The district court therefore should have accepted the return of the cases. That said, the local public defender was obligated to "counsel and defend . . . the defendant[s]" until the district court entered an order accepting the return of the cases. Iowa Code § 13B.9(1)(*a*) (2024). We reject the State Public Defender's argument that the local public defender's representation ended upon its unilateral return of the case to the court.

**A. Standard of Review.** "In a certiorari case, we review a district court's ruling for correction of errors at law." *State Pub. Def. v. Iowa Dist. Ct.*, 886 N.W.2d 595, 598 (Iowa 2016). "When reviewing for correction of errors at law, we are bound by 'the district court's well-supported factual findings' but not its legal conclusions." *Id.* (quoting *State Pub. Def. v. Iowa Dist. Ct. for Clarke Cnty.*, 745 N.W.2d 738, 739 (Iowa 2008)). "A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise has acted illegally." *Id.* (quoting *State Pub. Def. v. Iowa Dist. Ct. for Plymouth Cnty.*, 747 N.W.2d 218, 220 (Iowa 2008)). "Illegality exists when the court's findings lack substantial

evidentiary support, or when the court has not properly applied the law." *Id.* (quoting *Iowa Dist. Ct. for Plymouth Cnty.*, 747 N.W.2d at 220).

**B. Whether the State Public Defender's Petition Was Timely Filed and Whether He Preserved Error.** "A petition for writ of certiorari must be filed within 30 days after entry of the challenged decision." Iowa R. App. P. 6.107(1)(*b*). The district court denied the Davenport PD's motions to withdraw in October and November, more than thirty days before the State Public Defender filed its petition for a writ of certiorari on December 31, 2024. The attorney general therefore argues that the State Public Defender's petition was untimely and failed to preserve error. We decline to hold that the die was cast by the October or November rulings denying the Davenport PD's motions to withdraw. To the contrary, those rulings, by their own terms, were not final but rather invited the Davenport PD to set hearings and make a record supporting its grounds to withdraw.

The State Public Defender's petition was filed within thirty days of the district court's December orders that he challenges as illegal: specifically, the December 6 orders requiring a public defender to file an appearance, the December 19 orders specifically appointing Puentes or his designated staff attorney, and the December 31 orders rejecting any relief from Puentes's "Notice of Return" under section 13B.9(4)(*a*). Those December orders are inextricably intertwined with the October and November orders denying the Davenport PD's motions to withdraw, and all the district court's orders are interlocutory. We conclude that we have jurisdiction, and our review may include the earlier rulings. *See Hammer*, 463 N.W.2d at 89.

In *Hammer v. Branstad,* the plaintiffs filed a putative class action challenging the State's implementation of comparative worth legislation

adjusting salaries of state government employees. *Id.* at 87. The district court granted class certification in an order entered in November 1988 and granted the plaintiffs' motion for partial summary judgment on liability in February 1989, with damages to be determined at trial. *Id.* at 88. We granted the defendants' application for interlocutory appeal filed in March. *Id.* The plaintiffs argued that the class certification order was not reviewable because it was entered over thirty days before the defendants sought appellate review. *Id.* We disagreed, explaining:

> [S]ituations may arise in which earlier orders which have not been appealed are so inextricably intertwined with the issues presented in an appeal of a subsequent interlocutory order that consideration of both orders is necessary to best facilitate the litigation as a whole. This is such a case. To deny an appellate court the right to review the merits of prior orders in such situations would unduly tie its hands.

*Id.* at 89.

The State Public Defender's certiorari action is also such a case. *See id.* The validity of the district court's interlocutory orders from October through December all turn on whether the local public defender was entitled, under section 13B.9(4)(*a*), to withdraw from the six criminal cases based on its representation that its office suffered from a temporary overload of cases without providing detailed evidence of the extent of the overload. Applying *Hammer*, we decline to confine our review to the December rulings.

We also hold that error was preserved. The Davenport PD presented the temporary overload issue to the district court repeatedly, and the district court ruled on the issue, denying relief, which preserved error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). So we turn to the merits.

**C. Whether the District Court Exceeded Its Jurisdiction or Acted Illegally in Applying Iowa Code Section 13B.9(4)(*a*).** The State Public Defender argues that it is entirely within the local public defender's authority to "return" a case to the district court because of a temporary overload of cases, and when it does, the district court can do nothing but accept that return, release the local public defender's office from the case, and appoint another attorney under section 815.10 if no successor designee has been designated. The attorney general argues that the district court must have a role in determining whether the statutory threshold—the existence of a "temporary overload of cases"—has been met before it must then appoint another attorney. We agree with the attorney general that the district court has a role. The question is the extent of that role.

We start with the statutory text. A local public defender "shall handle every case to which [it] is appointed" by the district court "if the local public defender can reasonably handle the case." Iowa Code § 13B.9(3). Section 13B.9(4)(*a*) provides:

> If a conflict of interest arises or if the local public defender is unable to handle a case because of a temporary overload of cases, the local public defender shall return the case to the court. If the case is returned and the state public defender has filed a successor designation, the court shall appoint the successor designee. If there is no successor designee on file, the court shall make the appointment pursuant to section 815.10. As used in this subsection, "successor designee" may include another local public defender office . . . .

Under the plain meaning of section 13B.9(4)(*a*), a temporary overload is required to trigger the court's duty to appoint someone else—a successor designee if one has been designated by the SPD, or substitute counsel under section 815.10 if not. That statute in turn provides, as relevant:

2. If the state public defender or the state public defender's designee is unable to represent an indigent person, the court shall appoint an attorney who has a contract with the state public defender to represent the person in the particular type of case and in the county in which the case is pending.

3. If the court determines that no contract attorney is available to represent the person, the court may appoint a noncontract attorney. The order of appointment shall include a specific finding that no contract attorney was available.

*Id.* § 815.10(2)–(3).

Here, the district court found that no contract attorneys were available for appointment to these six cases under section 815.10(2). With respect to its discretionary authority under section 815.10(3), the district court concluded that no willing, noncontract private attorneys were available. Because there was no one else to appoint, the district court concluded that there was no statutory basis for relieving the SPD of its duty to represent these indigent defendants. *See id.* § 13B.4(1)(*a*) ("The state public defender shall coordinate the provision of legal representation to all indigents under arrest or charged with a crime who face the possibility of imprisonment under the applicable criminal statute or ordinance."). It therefore rejected the Davenport PD's "return" of the cases.

1. *The state public defender's obligation to coordinate indigent defense is distinct from determining whether a local public defender can return a case.* Before getting into what happens when a local public defender "returns" a case to the court, it is important to understand the specific scheme that the general assembly created for the powers and duties of state and local public defenders. Returning a case based on a temporary overload of cases—or based on a conflict of interest, for that matter—under section 13B.9(4)(*a*) is done at the local public defender level, not the state public defender level. By focusing on the state public defender's role in coordinating indigent defense, the district court erroneously

conflated the roles of the SPD and a local public defender. These are distinct offices with distinct obligations under chapter 13B. To the extent another local public defender office could assist the Davenport PD, that consideration comes into play only *after* the local public defender returns a case to the court. When a case is returned, the district court then appoints a designee if one has been identified by the *state* public defender. *See id.* § 13B.9(4)(*a*) ("If the case is returned [by the local public defender] and the *state public defender* has filed a successor designation, the court shall appoint the successor designee." (emphasis added)). The SPD may designate another local public defender office as a successor designee, *see id.* ("As used in this subsection, '*successor designee*' may include another local public defender office."), and if it does, then the court can appoint that other local office to take the returned case, *id.* But the SPD's statutory obligation to coordinate statewide indigent defense does not affect whether the Davenport PD can return a case for a temporary overload.

Two points are important here. First, it is the state public defender who is responsible for filing a successor designation with each district court clerk's office, not the local public defender. *See id.* § 13B.4(2) ("In each county in which the *state public defender* files a designation, the state public defender's designee shall be appointed by the court to represent all eligible persons . . . in all cases and proceedings specified in the designation." (emphasis added)). So the decision of whether to designate another local office—such as the Cedar Rapids, Dubuque, or Burlington offices—as a successor designee for the Davenport PD belongs to the SPD in its role of coordinating indigent defense across the state, not the Davenport PD in its determination of whether it is experiencing a temporary overload.

Second, whether the SPD has identified a successor designee for the court to appoint in the local public defender's place is irrelevant to the separate, preliminary question about whether the local public defender has met the statutory conditions to return a case. While the SPD is authorized to file a designation of successor designees, and the court is required to appoint that successor designee when a case is returned by a local public defender, *id.* § 13B.9(4)(*a*), whether a successor designation has been filed with the court plays no part in determining whether the local public defender can return a case to the court in the first place.

The dissents, like the district court, treat the availability of replacement counsel as relevant to whether a local public defender may return a case in the first instance. It is not. Section 13B.9(4)(*a*) does not condition the return of a case—whether for a conflict of interest or for a temporary overload of cases—on the availability of replacement counsel. These are distinct and sequential events. *See id.* ("If a conflict of interest arises or if the local public defender is unable to handle a case because of a temporary overload of cases, the local public defender shall return the case to the court. If the case is returned and the state public defender has filed a successor designation, the court shall appoint the successor designee. If there is no successor designee on file, the court shall make the appointment pursuant to section 815.10."); *cf. State Pub. Def.*, 886 N.W.2d at 600 ("[T]he plain language of [section 13B.9(4)(*a*)] allocated to the court—not the public defender—the responsibility of selecting and appointing a successor counsel . . . .").

It may very well be that the general assembly did not contemplate that there might not be an available replacement when the local public defender office faced a temporary overload, the very position in which the district court found

itself in these six cases. But that does not change the plain language of section 13B.9(4)(*a*), which provides no statutory basis for considering whether a replacement is available before deciding whether a local public defender can return a case.

This takes us back to the point about the distinct roles of the state public defender and a local public defender. Section 13B.9(4)(*a*) allows a *local* public defender to return a case when it is temporarily overloaded. The *state* public defender has its own distinct statutory obligation to "coordinate the provision of legal representation to all indigents under arrest or charged with a crime who face the possibility of imprisonment." *Id.* § 13B.4(1)(*a*). The district court erred in relying on the *state* public defender's obligations under section 13B.4 in refusing the *local* public defender's attempt to return these six cases, even if the Davenport PD was in fact temporarily overloaded.

2. *The district court has a very limited role in accepting the return of a case based on a temporary overload.* The dispute in this case revolves around what it means for a local public defender to "return [a] case to the court." *Id.* § 13B.9(4)(*a*) ("If a conflict of interest arises or if the local public defender is unable to handle a case because of a temporary overload of cases, the local public defender *shall return the case* to the court." (emphasis added)). This language—"shall return the case"—is not the language typically used when a party requests relief from the court. *See, e.g.*, Iowa R. Civ. P. 1.431(1) ("A motion is an application made by any party or interested person for an order related to the action."); *id.* r. 1.602(2)(*a*) ("Upon application of any party . . . , [with exceptions], the court or its designee shall enter a scheduling order . . . ."); *id.* r. 1.801 ("On motion, the place of trial may be changed . . . ."). Yet, when an action does not need court approval, we often see language making that point

clear. *See, e.g., id.* r. 1.943 ("A party may, *without order of court*, dismiss that party's own petition . . . ." (emphasis added)); *id.* r. 1.972(1) ("If a party . . . is in default under rule 1.971(1) or 1.971(2), the clerk shall enter that party's default in accordance with the procedures set forth in this rule *without any order of court.*" (emphasis added)). Indeed, we have previously recognized that the general assembly's express direction that a local public defender "shall return the case" when confronted with a conflict of interest differs from "the general rule under the Iowa Rules of Professional Conduct . . . that appointed counsel may not withdraw from representation without permission from the appointing authority." *State Pub. Def.*, 886 N.W.2d at 599 (comparing a local public defender's duty under section 13B.9(4)(*a*) with Iowa Rule of Professional Conduct 32:1.16(c) and comment 3 to that rule).

In construing a particular word or phrase's meaning, we must consider "the context of the other words used in the provision [and] how the provision fits into the greater statutory scheme." *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 681 (Iowa 2022). The local public defender office cannot "return" just any case under section 13B.9(4)(*a*). Rather, its ability to do so is limited to two circumstances: (1) "[i]f a conflict of interest arises"; or (2) "if the local public defender is unable to handle a case because of a temporary overload of cases." Iowa Code § 13B.9(4)(*a*).

There is no dispute that the court has a role in determining whether a public defender must, or may, withdraw from representing a criminal defendant based on a conflict of interest. That role can be fairly robust because "[t]he question of whether a conflict exists is a mixed question of fact and law." *State v. McKinley*, 860 N.W.2d 874, 878 (Iowa 2015). For instance, *State v. McKinley* required us to determine whether two public defenders with the Polk County

adult public defender's office who had been appointed to represent a defendant charged with first-degree murder were required to withdraw after they learned other attorneys in their office had previously represented three of the State's witnesses against their client on unrelated charges. *See* 860 N.W.2d at 876. The determination turned on whether the facts presented an actual concurrent conflict of interest within the meaning of Iowa Rule of Professional Conduct 32:1.7, *id.* at 881–82, or a serious potential for conflict that would be materially adverse to the public defender office's former clients under rule 32:1.9, *id.* at 882–83. Even then, in concluding that rules 32:1.7 and 32:1.9 did not require withdrawal, we gave considerable deference to the attorneys' professional statements about their lack of knowledge concerning the prior representations by their colleagues as well as the prophylactic measures within their office to shield them from problematic information. *Id.* at 883.

That deference to the public defender is also reflected in our recent case of *State v. Miller*, 975 N.W.2d 807 (Iowa 2022). In *Miller*, the district court granted a public defender's motion to withdraw shortly before trial. The motion stated only that further representation would result in the attorney violating the rules of professional conduct and that the attorney could not be more specific without violating the attorney–client privilege. *See id.* at 810. On appeal from his conviction following a trial where the defendant represented himself with standby counsel, the defendant used the district court's statement "that it had 'no choice but to grant [the] application to withdraw,'" to argue the district court abused its discretion by not inquiring further. *Id.* at 813. In rejecting the defendant's argument, we cited with approval comment 3 to rule 32:1.16:

> When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. . . . The court may request an explanation for the withdrawal, while the

lawyer may be bound to keep confidential the facts that would constitute such an explanation. *The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.*

*Id.* at 814 (omission in original) (quoting Iowa R. of Prof'l Conduct 32:1.16, cmt. [3]).

Like in *McKinley*, we applied the facts of the case—based on the attorney's professional statement—to the law developed in our rules to protect the attorney–client privilege. We accepted the professional statement without imposing a more stringent evidentiary burden because "attorneys are officers of the court, and 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *Id.* (quoting *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978)).

Although section 13B.9(4)(*a*) treats conflicts of interest and a temporary overload of cases as parallel bases for a public defender to "return [a] case to the court," there is a critical difference between the analysis required for each. Whereas "[t]he question of whether a conflict exists is a mixed question of fact and law," *McKinley*, 860 N.W.2d at 878, the question of whether "the local public defender is unable to handle a case because of a temporary overload of cases," Iowa Code § 13B.9(4)(*a*), is entirely a question of fact. A "temporary overload" is not a legally defined term. Unlike the body of law and professional rules directly addressing conflicts of interest, there are no rules or standards in Iowa setting limits for an attorney's acceptable workload in general, let alone for a local public defender office.

Here, in response to the district court's first round of orders denying the motions to withdraw and noting that the Davenport PD had recently become fully staffed, the Davenport PD filed a second motion in each of the six cases. In each,

the Davenport PD expressly stated: "The public defender is in receipt of the court's order denying their first motion to withdraw and after consideration of all applicable factors *including the number of attorneys in the office and caseloads*, has determined they are still ethically unable to handle this case." (Emphasis added.) Puentes signed each motion containing this statement. In our view, this statement satisfied the Davenport PD's burden to substantiate the condition precedent to returning the six cases to the court on the basis that it was "unable to handle [each] case because of a temporary overload of cases." Iowa Code § 13B.9(4)(*a*). Puentes "compl[ied] with applicable law requiring notice to . . . a tribunal" to terminate the representation. Iowa R. of Prof'l Conduct 32:1.16(c). Absent reason to doubt Puentes's representations, this case is no different than the professional statements we accepted in *McKinley* and *Miller*.

Once the Davenport PD satisfied the factual inquiry, the district court exceeded its authority by refusing to accept the return of the six cases and look for replacement counsel under the hierarchy set out by the general assembly in section 13B.9(4)(*a*). Unlike a conflict of interest, which involves a mixed question of law and facts, there is no legal standard in Iowa against which the court could gauge the representation made by the Davenport PD that its office was unable to handle these particular cases based on a temporary overload. *See, e.g.*, *Off. of Pub. Advoc. v. Sup. Ct., First Jud. Dist.*, 566 P.3d 235, 245–46 (Alaska 2025) ("We agree with other courts that have recognized that a court may not interfere with the management of public defender services unless 'presented with a case that demonstrates that the [public defender agency's] operations violate the constitution . . . .' " (alteration in original) (quoting *Kerr v. Parsons*, 378 P.3d 1, 13 (N.M. 2016) (Vigil, J., concurring specially))); *cf. Baker v. Carr*, 369 U.S. 186, 226 (1962) (explaining that courts will not "enter upon policy determinations for

which judicially manageable standards are lacking"). The district court recognized the lack of guidance against which to measure the workload even if the Davenport PD had provided details about the number and types of cases in its office. Even while asking for specific information about the office's workload since becoming fully staffed, the district court stated in its order:

> The Court is unaware of the caseload of the public defender's office, per attorney, prior to . . . being fully staffed as compared to the current caseload now that full staffing has occurred. The Court does not know the ideal caseload per attorney nor the maximum caseload per attorney. The Court is unaware of the methodology for arriving at the ideal or maximum caseload.

The district court is "unaware of the methodology" for determining either the optimum or the maximum caseload because there is none, at least not a legally mandated one in Iowa. Our professional rules of conduct do impose duties on an attorney that tangentially touch on the amount of work an individual attorney can accept. *See, e.g.,* Iowa R. of Prof'l Conduct 32:1.1 (requiring attorneys to provide competent representation, which requires, inter alia, "preparation reasonably necessary for the representation"); *id.* r. 32:1.3 (requiring an attorney to "act with reasonable diligence and promptness in representing a client"); *id.* r. 32:8.4(d) (identifying professional misconduct to include "engag[ing] in conduct that is prejudicial to the administration of justice"). But none of our rules set a guideline for determining when an attorney—let alone an entire local public defender office—is sufficiently temporarily overloaded with cases that they cannot ethically accept any more.

3. *What constitutes an overload is for the local public defender to determine.* A compelling canon of statutory construction is constitutional avoidance. *See Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa 2010) ("If fairly possible, a statute will be construed to avoid doubt as to constitutionality."). Digging too

deeply into a local public defender's caseload to decide whether the office is experiencing a temporary overload sufficient to allow the public defender to return a particular case risks infringing on the SPD's responsibility for coordinating indigent defense and flirts with separation of powers concerns. *See, e.g., Off. of Pub. Advoc.*, 566 P.3d at 246–47 (explaining that it was only "[b]ecause the court had a duty to ensure [the represented defendant's constitutional] rights were protected[ that] it did not violate the separation of powers doctrine" when the district court concluded the public defender agency's understaffing prevented it from adequately represent a criminal defendant to the level of creating a conflict of interest to support ordering the agency to withdraw and appointing the Office of Public Advocacy).

We recognize that the court has a role in ensuring that when a local public defender represents that its office cannot accept a particular case based on a temporary overload of cases, that representation is sincere. But by leaving it to the local public defender to make the factual determination of what amounts to an overload, we thread the constitutional needle and avoid treading into areas left to the political branches of government. To hold otherwise would require district courts to dig into the details of a local public defender office in determining what level of caseload was sufficiently onerous to be considered a "temporary overload," potentially encroaching upon its personnel and hiring decisions. Would the district court need details about the office's vacation and sick policies? Accommodations made for an attorney's maternity leave? Or cancer diagnosis? Courts could also encroach on attorney–client privileged information. Would the district court need details about the planned defense in each case to properly allocate the case's weight in assessing the office's overall workload?

The primary dissent insists that Puentes should be required to present evidence of the number of attorneys in his office, the number of cases each attorney carried and how many went to trial, how many hours each attorney worked, and the office's prior workload levels for comparison purposes, as well as information most likely beyond his control, such as hours worked by public defenders in other offices across the state or by contract attorneys and the workload of "similarly situated prosecutors." These are the kind of details the district court expected from the Davenport PD in an evidentiary hearing. But then what? To ask the question is to answer it. Without standards against which to measure this information, individual district court judges would quickly turn into micromanagers of the local public defender office in their county. The general assembly has instead given that responsibility to the executive branch.

"The local public defender shall be responsible for assigning cases to individual attorneys within the local public defender office and for making decisions concerning cases in which the local public defender has been appointed." Iowa Code § 13B.9(3). And the SPD determines the types of cases its designees can accept from the outset. *See id.* § 13B.4(2) ("The appointment shall not be made if the state public defender or the state public defender's designee notifies the court that the state public defender's designee will not provide services in certain cases as identified in the designation by the state public defender."). Our conclusion that the district court's role does not extend to determining the specific caseload that satisfies the requirement for a "temporary overload" in a particular situation avoids interfering with these statutory responsibilities delegated to the public defender office. *Cf. Belin v. Reynolds*, 989 N.W.2d 166, 177 (Iowa 2023) (rejecting Governor's argument that the court could not assess the timeliness of her response to an Open Records

Act request because the analysis required by the Act would not involve inquiry into "political questions, like whether the Governor properly allocated resources when staffing her office"); *King v. State*, 818 N.W.2d 1, 18 (Iowa 2012) ("[T]his lawsuit asks the courts to enter into a longstanding debate over the merits of state mandates versus local control in public education. That may require an initial policy determination of a kind clearly for nonjudicial discretion."); *Des Moines Reg. & Trib. Co. v. Dwyer*, 542 N.W.2d 491, 494–95 (Iowa 1996) (en banc) (explaining that the nonjusticiable " 'political question[s]' . . . principle stems primarily from the separation of powers doctrine which requires we leave intact the respective roles and regions of independence of the coordinate branches of government").

4. *Our distinct statutory scheme makes comparison to other jurisdictions of little value.* Cases from other states are of little assistance to us given their materially distinct public defender statutory provisions. Thus, it would be improper—as the primary dissent suggests—to "follow the decisions of other jurisdictions that require their public defenders to prove an overload that justifies withdrawal from or avoidance of future appointments, with the trial court deciding whether the defender has provided the necessary quantum of evidence" without considering those statutory differences.

For instance, Florida law expressly says: "In no case shall the court approve a withdrawal by the public defender or criminal conflict and civil regional counsel based solely upon inadequacy of funding or excess workload of the public defender or regional counsel." Fla. Stat. § 27.5303(1)(*d*) (2025). The Florida Supreme Court's conclusion that a district court is not "obligated to permit the withdrawal automatically upon the filing of a certificate by the public defender reflecting a backlog" flows directly from that statutory scheme. *Skitka v.*

*Florida*, 579 So. 2d 102, 104 (Fla. 1991). Indeed, a Florida court is statutorily *precluded* from allowing a public defender to withdraw based solely on an overload of cases—the opposite of our own scheme that expressly directs a local public defender to return a case on that very basis.[3]

Similarly, Missouri has a detailed statutory scheme under which a district public defender can "request a conference to discuss caseload issues" concerning individual defenders with the court, following which the court can grant relief and appoint a private attorney only "*upon a finding* that the individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload issues." Mo. Rev. Stat. § 600.063(1), (3) (West, Westlaw through Jan. 15, 2026) (emphasis added). Likewise, in California, a district court can appoint a private attorney to represent an indigent defendant where "the *court finds* that, because of a conflict of interest or other reasons, *the public defender has properly refused*" to represent an indigent criminal defendant. Cal. Penal Code § 987.2(a)(3) (West, Westlaw through Jan. 15, 2026) (emphasis added). Again, the California statute expressly allows for court findings. Our scheme provides no similar role for Iowa courts.

In comparison, Iowa Code section 13B.9(4)(*a*) is closer to Wyoming's statute. There, if at the time of an indigent defendant's initial appearance he "does not have an attorney and wishes one, the court shall *notify an available public defender* for the judicial district or shall appoint an attorney to represent the needy person *if no public defender is available*." *Lozano v. Cir. Ct. of Sixth*

---

[3]The various factors a Florida court weighs in considering whether to allow a public defender to withdraw based on a work overload also flows from that statutory scheme. *See, e.g.*, *In re Certification of Conflict in Motions to Withdraw Filed by Pub. Def. of Tenth Jud. Cir.*, 636 So. 2d 18, 22 (Fla. 1994) (noting that the public defender's "history of seeking withdrawal, the sheer number of cases affected . . . , and the substantial financial burden . . . all mandate[] careful scrutiny of the motions to withdraw"). These factors cannot be wholesale lifted into a diametrically opposed scheme.

*Jud. Dist.*, 460 P.3d 721, 733 (Wyo. 2020) (emphasis altered) (quoting Wyo. Stat. Ann. § 7-6-105(b) (LexisNexis 2019)). Reasoning that "[b]y its plain terms, section 105(b) contemplates that even before an appointment is made, a determination may have been made that the public defender is not available for an appointment," the Wyoming Supreme Court recognized that the statute "begs the question of who is to make the determination of unavailability, the appointing court or the public defender." *Id.* at 733–34. But nothing in the statute provided "a procedure for determining a public defender's availability at the initial appearance stage of the proceedings." *Id.* at 734. Considering the lack of a statutory procedure coupled with the direction to "the court to *notify* an *available* public defender, [the court] read section 105(b) to contemplate that it is the public defender who will make the determination of its availability before representation is undertaken." *Id.*

While Iowa Code chapter 13B is concededly different than the Wyoming statute, our statutory language and structure are much closer to Wyoming's statute than they are to Florida's, Missouri's, or California's. Chapter 13B provides no process for determining whether a local public defender is temporarily overloaded. Further, section 13B.9(4)(*a*) is directed first to the local public defender, requiring it to "return the case to the court" "if the local public defender is unable to handle a case because of a temporary overload of cases." Iowa Code § 13B.9(4)(*a*). The court is then directed to "appoint the successor designee" if one is on file, and if there isn't one, to "make the appointment pursuant to section 815.10." *Id.*

Like the Wyoming Supreme Court, we believe that leaving the detailed determination of when a local public defender is temporarily overloaded to the public defender "neither undermines nor is inconsistent with an appointing

court's authority over its orders of appointment, but instead allocates discretion in a workable manner." *Lozano*, 460 P.3d at 734. We agree with that court's reasoning:

> The public defender is in the best position to know its resources, including its attorneys, the skills and experience of its attorneys, and the weight and complexity of each office's caseload. We see little to be gained by requiring an evidentiary hearing for each individual case in which the public defender declares its unavailability based on those factors that are uniquely within its knowledge.

*Id.*

5. *The district court abused its discretion in rejecting the Davenport PD's return of the cases.* Given the purely factual nature of the issue, and the lack of a standard against which to measure whether a local defender's office's workload amounts to a temporary overload, the district court abused its discretion by requiring an evidentiary hearing before accepting the Davenport PD's representations in the six motions. Those representations satisfied the statutory condition for returning the case when the local public defender "is unable to handle a case because of a temporary overload of cases." Iowa Code § 13B.9(4)(*a*). The district court was obligated to then search for replacement counsel as directed by section 13B.9(4)(*a*).

This is not to say that a local public defender's unembellished return of a case with only a citation to section 13B.9(4)(*a*) necessarily satisfies the burden of establishing the condition for returning a case. This is where the district court's role—although limited—comes in. The precondition of a temporary overload that makes a local public defender unable to take a particular case must still be satisfied. The district court properly exercised its discretion in response to the first motions filed in each case here, where the motions either checked a "temporary overload" box on a motion template or merely stated:

"In accordance with Iowa Code Section 13B.9(4), the public defender is returning the case to the court." And a district court would be well within its discretion to reject the return of a case in instances like the State's hypothetical of a local public defender office claiming to be overloaded because the entire office was taking eleven days off in August to attend the state fair. A local public defender office cannot shirk its constitutional and statutory obligations to provide counsel for indigent defendants.

Neither the district court nor the dissents really quarrel with the sincerity of the Davenport PD's representation that its office was overloaded despite recently becoming fully staffed.[4] Their concerns focus on the unavailability of substitute counsel given the lack of contract or willing noncontract attorneys to appoint in the local public defender's place. These are valid concerns in the greater scheme of providing an indigent defendant with her constitutionally mandated right to court-appointed counsel. But whether a local public defender office is suffering from a temporary overload of cases is not a relative term that depends on the availability of replacement counsel. Here, the conflict-of-interest counterpart is again telling. When a local public defender seeks to return a case based on a conflict of interest, the unavailability of replacement counsel does not affect the determination of whether the local public defender has a conflict with his client. That determination depends on the particulars of the public defender's relationship with her client, irrespective of whether a replacement attorney is available. In the same way, whether a local public defender is temporarily overloaded depends on the specifics of the cases currently being handled by the

---

[4]That the Davenport PD had recently become fully staffed does not undermine Puentes's representations that—considering the attorneys in his office and their then-current caseloads—the office's temporary overload precluded it from accepting these six specific cases. Neither does the primary dissent's suppositions about future events or what the state public defender might do in future cases.

local public defender's office and its staff, not on whether a replacement attorney is available elsewhere.

6. *What we are not deciding.* This certiorari proceeding addresses only whether the court should have accepted the Davenport PD's return of these six cases based on Puentes's representations without requiring an evidentiary hearing. It does not address who is to be appointed in their place. We sympathize with the district court's frustration that the Davenport PD was not sufficiently staffed to represent these indigent defendants in one of Iowa's busiest counties. We also share its frustration with the dwindling number of attorneys willing to serve as contract attorneys across the state and especially in Scott County. Nor do we suggest that the district court should have appointed unwilling private attorneys to take on a criminal case, a decision within the district court's broad discretion. *See* Iowa Code § 815.10(3) ("If the court determines that no contract attorney is available to represent the person, the court *may* appoint a noncontract attorney." (emphasis added)). We are only deciding the meaning of section 13B.9(4)(*a*) as it pertains to the Davenport PD's ability to return the six criminal cases at issue here to the Iowa District Court for Scott County based on a temporary overload. Nothing more, nothing less.

Section 13B.9(4)(*a*) is directed at the local public defender's temporary unavailability, not the SPD's statewide availability. Thus, the focus in this case is limited to the Davenport PD's temporary overload of cases. It does not address the SPD's separate obligation to coordinate indigent defense under chapter 13B, an obligation "intended . . . to implement Sixth Amendment rights." *Simmons*, 791 N.W.2d at 88. Nor does it address overloads in public defender offices that reach a level of permanency or the SPD's ability—or obligation—to designate

successor designees for its local public defender offices—including neighboring local public defender offices in Cedar Rapids, Burlington, or Dubuque.

This decision does not address what must happen moving forward in the proceedings for the six affected defendants to avoid violating their constitutional rights to counsel. The district court will either find attorneys to appoint or face the potential of allowing criminal cases to be dismissed for lack of constitutionally mandated appointed counsel.

**IV. Conclusion.**

The district court exceeded its limited role in determining whether the Davenport PD should be allowed to withdraw from the six identified cases by requiring an evidentiary hearing detailing the office's workload instead of accepting Puentes's representation—made as an officer of the court—that, having considered the number of attorneys and their caseloads, his office could not handle these six cases because of a temporary overload. For the reasons above, we sustain the State Public Defender's writ of certiorari and vacate the district court's orders attaching Puentes to the six pending criminal cases in Scott County after the Davenport PD returned the cases.

**Writ Sustained.**

McDonald, McDermott, and May, JJ. join this opinion. Waterman, J., files a dissenting opinion, in which Christensen, C.J., and Mansfield, J., join. Mansfield, J., files a dissenting opinion, in which Christensen, C.J., and Waterman, J., join.

**Waterman, Justice (dissenting).**

I agree with the majority's conclusion that the State Public Defender (SPD) preserved error and timely sought certiorari review. But I respectfully dissent from the majority's resolution of this appeal on the merits. And I join Justice Mansfield's dissent. I would affirm the district court's well-reasoned rulings denying the SPD's motions to withdraw.[5] In my view, the SPD bears the burden of *proving* it has a "temporary overload" within the meaning of Iowa Code section 13B.9(4)(*a*) (2024). At the district court, the SPD offered no evidence to show that a temporary overload in fact existed after it undisputably became fully staffed. The district court correctly denied its motions to withdraw based on that failure of proof. The majority today erroneously abdicates the court's role in deciding whether the SPD established grounds to withdraw.

Now, based only on the SPD's say so—and with no meaningful judicial oversight—the SPD can evade its statutory obligations and undermine the State's constitutional requirement to provide defense counsel for indigents facing possible incarceration. As the majority recognizes, the consequences of today's decision include dismissal of criminal charges "for lack of constitutionally mandated appointed counsel."

Importantly, the majority did not accept the SPD's position that the district court must appoint unwilling private attorneys to substitute for public defenders. But if the district court ultimately does so, and the private attorneys file motions to withdraw on grounds of financial hardship or lack of competence

---

[5]Because I do not accept the majority's blinkered view of the SPD's role vis a vis the Davenport branch, I will refer to the state-wide entity as the "State Public Defender" or "SPD," and I will refer to the Davenport branch of the SPD as "the local office" or "the Davenport office."

in criminal law, I assume the district court will take their word and grant the motions, as it now must do for the SPD.

The majority opinion is wrong for multiple reasons:

- It violates well-settled principles on the burden of proof.

- It disregards the district court's stated reason for denying the motions, namely "due to a lack of information provided by the movant [the SPD]" (a failure of proof) and instead mischaracterizes the rulings as based *solely* on the unavailability of contract lawyers.

- It mischaracterizes as a "professional statement" the public defender's conclusory assertion about workload, even though under our precedent, such uninterrogated statements cannot satisfy the proof requirement.

- It is contrary to well-settled precedent recognizing the courts' duty of inquiry when adjudicating motions to withdraw under section 13B.9(4)(*a*).

- It myopically focuses on the SPD's Davenport office, without considering the SPD's ability to reallocate resources from its other local offices to fulfill its statutory obligation to coordinate statewide indigent defense.

- It is internally inconsistent. It asserts on the one hand that the SPD's temporary overload is an unreviewable political question (with no standards to guide its determination), and on the other hand that the SPD's overload is a purely factual determination (and thus reviewable). It cannot be both.

- It misapplies the separation of powers doctrine. Under chapter 13B, the district court appoints defense counsel, including the SPD, so the

corresponding power to adjudicate motions to withdraw must fall within the court's role. The powers go hand in hand: if the court violates "the separation of powers" by denying motions to withdraw, how can it appoint counsel in the first instance?

- It allows the SPD to encroach on judicial power by effectively eliminating judicial oversight over withdrawals based on the mere allegation of a temporary workload.

- It fails to distinguish between temporary and permanent overloads. The Davenport office was fully staffed, yet the SPD gave no deadline for when the overload would end. Isn't that a permanent overload?

- In seeking to avoid a constitutional problem, the majority creates a bigger one: unrepresented indigent defendants in our state courts.

I will address the majority's errors at greater length below.

**I. The SPD Bears the Burden to Prove Its Temporary Overload.**

The SPD has the burden to prove its temporary overload of cases under the plain meaning of section 13B.9(4)(*a*) before the SPD is entitled to withdraw from the representation of an indigent defendant. The SPD admittedly submitted no evidence of an overload. The district court correctly found that no temporary overload has been shown. Without proof of an overload, the district court acted within its discretion to deny the SPD's motion to withdraw, and the SPD is not entitled to return the case for appointment of substitute counsel.

**A. The SPD Failed to Satisfy Its Burden to Prove a Temporary Overload.** Well-settled legal principles require the SPD to prove that it was temporarily overloaded. The SPD is the plaintiff in this certiorari action and is the party alleging a temporary overload as the basis for relief from the district court's order appointing it as defense counsel. If the SPD cannot establish its

purported overload, then the local public defender must handle the cases to which it is appointed. *See* Iowa Code § 13B.9(3), (4)(*a*). "Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established." Iowa R. App. P. 6.904(3)(*e*); *see also In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (applying Iowa Rule of Appellate Procedure 6.904(3)(*e*) to place the burden of proof when the controlling statute is silent). Here, that party is the SPD. And under the "ordinary default rule," the "burden lies, as it typically does, on the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51, 56, 58 (2005); *see also In re N.S.*, 13 N.W.3d 811, 822 (Iowa 2024) (applying the ordinary default rule and Iowa Rule of Appellate Procedure 6.904(3)(*e*) to place the burden of proof on the party seeking relief); *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017) (noting that the burden of proof has "been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion" (quoting 2 *McCormick on Evidence* § 337 (7th ed. 2013))).

It makes sense to place the burden of proof on the SPD, which has the information necessary to ascertain the existence of any temporary overload, including the workload of its staff attorneys in the Davenport office, and its ability to assign Scott County cases to its staff attorneys in Cedar Rapids, Dubuque, Burlington, or elsewhere. *See In re N.S.*, 13 N.W.3d at 822 ("It makes sense to place the burden of proof on petitioners, who best know their own course of treatment and progress since their mental health commitment."); *see also Schaffer ex rel. Schaffer*, 546 U.S. at 60–61 (discussing a party's unique or superior access to information as a factor for assigning it the burden of proof); *Walker v. Schult*, 45 F.4th 598, 616 (2d Cir. 2022) ("The burden of proof as to a

given issue is normally placed on the party who has an affirmative goal and presumptive access to proof.").

I would follow the decisions of other jurisdictions that require their public defenders to prove an overload that justifies withdrawal from or avoidance of future appointments, with the trial court deciding whether the defender has provided the necessary quantum of evidence. *See, e.g., Pub. Def. v. State*, 115 So. 3d 261, 279–82 (Fla. 2013) (holding that under Florida law, district courts determine whether a public defender's motion to withdraw based on workload has a sufficient evidentiary foundation); *State v. Covington*, 318 So. 3d 21, 26–27 (La. 2020) (requiring case-by-case determination of overload); *Area 5 Pub. Def. Off. v. Kellogg*, 610 S.W.3d 383, 390 (Mo. Ct. App. 2020) (remanding case for trial court to make factual findings whether individual attorneys have excessive caseloads).

The SPD cites no case from any jurisdiction holding that the trial court has no role in determining whether an overload permits the public defender to withdraw from cases and avoid new assignments. The majority cites but one: a divided Wyoming Supreme Court decision that interpreted a materially different statute: *Lozano v. Cir. Ct.*, 460 P.3d 721, 734 (Wyo. 2020) (concluding that the public defender has sole discretion to declare its unavailability due to workload, without an evidentiary hearing). *Lozano* is distinguishable. Unlike the six Scott County cases at issue here, private attorneys were available for appointment in *Lozano*. *Id.* at 725. And unlike the Iowa SPD, the Wyoming public defender submitted evidence showing: (1) that it had "4.5 attorneys handling the workload of 7.5 attorneys," (2) that it had no applicants for its vacant positions, and (3) that it was lobbying the Wyoming Governor for greater funding. *Id.* at 724–25.

*Lozano* is also distinguishable because its analysis relied on a Wyoming statute that merely permits the court to "notify" an "available" public defender, leaving the office to determine its own availability. *See id.* at 733–34 (citing Wyo. Stat. Ann. § 7-6-105(b) (Lexis 2019)). I find more persuasive the concurring opinion's determination that "the public defender does not have unreviewable authority to declare the attorneys in her office are not 'available.' " *See id.* at 739 (Kautz, J., specially concurring). As Justice Kautz explained,

> Because the statute requires the court to notify an available public defender, and requires the court to appoint someone else if no public defender is available, I conclude the statute intends for the court to make the final decision about availability. No language in the statutes indicates the public defender decides availability and then dictates that to the court.
>
> The context of the public defender statutes in the criminal process indicates to me that the court decides availability. It is obvious that by appointing a public defender, the appointing court is impliedly finding that the public defender is available. Likewise, if the appointing court finds no public defender is available, it appoints someone other than the public defender. Such findings are judicial functions, not circumstances which the executive branch may unilaterally dictate to the court.

*Id.* Accordingly, Justice Kautz concluded, "I would hold that under the statutes, the public defender should provide evidence to the court about [un]availability [due to workload], but the appointing court makes the final decision . . . ." *Id.* at 740. I reach the same conclusion on the overload issue under Iowa Code section 13B.9(4)(*a*).

**B. Public Defender Puentes's Statements in Written Filings Do Not Carry the SPD's Burden of Proof.** The majority effectively considers Puentes's assertions in his motions to withdraw as "professional statements" that can shoulder the SPD's evidentiary burden. The SPD never made that argument at district court or on appeal, so it has been waived or forfeited. *Morris v. Steffes*

*Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding that "unbriefed issues" were waived). We should not reverse the district court on grounds never raised below or on appeal. Nor should our court "assume a partisan role and undertake [a party's] research and advocacy." *Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974) (en banc).

Even if preserved, the "professional statement" argument lacks merit, which explains why the SPD didn't raise it. We have allowed courts to rely on counsel's professional statements in uncontested motions or when made on the record in open court, where counsel can be probed by the court or cross-examined. *See, e.g.*, *Frunzar v. Allied Prop. & Cas. Ins.*, 548 N.W.2d 880, 888 (Iowa 1996) ("Under Iowa law, professional statements are treated as affidavits and the attorney making the statement may be cross-examined regarding the substance of the statement."). Indeed, we have long held that it is an abuse of discretion to deny a request to question the lawyer on the record about his professional statement. *Cogley v. Hy Vee Food Stores, Inc.*, 137 N.W.2d 310, 311–13 (Iowa 1965) (reversing ruling that vacated default judgment because counsel for plaintiff was denied the opportunity to cross-examine defense counsel about his professional statement made in open court).

Puentes's conclusory statements in written filings cannot be "professional statements" proving the requisite temporary overload because the district court judge had no opportunity to question him on the record. *See id.* The district court was entitled to probe whether a temporary overload still existed after the Davenport office became fully staffed. The court repeatedly invited the SPD to set its motions for hearing so that a record could be "made and reported." The SPD chose not to do so. The district court acted within its discretion when it declined to find that a single sentence in each motion about a claimed overload met the

SPD's burden of proof. Moreover, Puentes's statement lacked *any* information about the SPD's number of staff attorneys, its cases per attorney, the hours its attorneys worked, or any comparison with prior workloads—any of which might have helped to establish the claimed overload. Finally, Puentes's statement fails to address the statutory requirement that the alleged overload be "temporary." The majority's professional statement theory doesn't fly.

The majority notes that we gave deference to defense counsel's professional statements about conflicts of interest in *State v. Miller*, 975 N.W.2d 807, 813–15 (Iowa 2022) (permitting withdrawal), and *State v. McKinley*, 860 N.W.2d 874, 883 (Iowa 2015) (rejecting conflict claim). But in both cases, the district court had the opportunity to question defense counsel in open court and engaged in a colloquy with counsel. *See Miller*, 975 N.W.2d at 810–11; *McKinley*, 860 N.W.2d at 877. Not so here, because the SPD never set its motions for hearing as the district court directed. Moreover, deference was especially warranted in *Miller* because further judicial inquiry into the conflict of interest would have invaded the attorney–client privilege with a client who apparently wanted to testify falsely at trial:

> Here, defense counsel declared in his motion to withdraw and at the hearing on that motion that professional considerations require termination of the representation but stressed that he could not "be specific without violating attorney–client privilege." He reiterated this again when the district court asked whether he believed it would be unethical for him to serve as standby counsel, explaining that he would still "be in the same ethical situation [he's] in now." The district court thoroughly examined the situation and conducted the level of inquiry it believed was best in that situation. We cannot find the district court abused its discretion by granting defense counsel's motion to withdraw after defense counsel stated that professional considerations required termination of the representation.

975 N.W.2d at 815 (alteration in original). No such deference is warranted when, as here, the district court could have probed the SPD's allegations of temporary overload without intruding on confidential or privileged communications.

Because the SPD has the burden to prove its temporary overload, and because it offered no evidence supporting its allegations, the district court correctly denied the SPD's motions to withdraw from or return the six cases.

The district court has discretion to forgo an evidentiary hearing on the temporary overload issue and may simply proceed to appoint successor counsel when willing private attorneys are available. That has been the practice in Scott County and many other counties. But the district court did not abuse its discretion here by requiring the SPD to submit proof of its temporary overload when contract attorneys and other willing private lawyers were unavailable.

**II. The Majority Disregards Our Precedent Imposing a Duty of Inquiry on District Courts to Determine Whether Grounds to Withdraw Exist.**

Our rules of professional conduct governing Iowa lawyers, including public defenders, require court-appointed counsel to obtain the district court's permission to withdraw from a case. *See* Iowa R. of Prof'l Conduct 32:1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation."); *id.* cmt. [3] ("When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority."). Under the majority's decision, the district court is no more than a rubber stamp when the SPD alleges a temporary overload. I would not discard the court's role so lightly. District court judges should remain gatekeepers, enforcing requirements for withdrawing from court-appointed representation of indigent defendants.

**A. The District Court's Duty of Inquiry Extends to the SPD's Alleged Temporary Overload**. Iowa Code section 13B.9(4)(*a*) provides two grounds for a

court-appointed public defender to withdraw: (1) a conflict of interest, and (2) a temporary overload. The district court must grant the SPD's motion to withdraw only if the SPD proves one of those grounds. The majority acknowledges that the district court decides whether a conflict of interest requires the public defender to withdraw. But it inexplicably disclaims the district court's role in determining whether the public defender must withdraw on grounds of a temporary overload. Why treat the two grounds differently? I would decline to create such an anomaly in our precedent.

Under well-settled Iowa precedent, the district court, not the SPD, decides whether conflicts of interest require withdrawal. *See, e.g.*, *State Pub. Def. v. Iowa Dist. Ct.*, 886 N.W.2d 595, 599–600 (Iowa 2016) (concluding that "the plain language of [section 13B.9(4)(*a*)] allocated to the court—not the public defender—the responsibility of selecting and appointing a successor counsel" and approving the practice where the local public defender "notif[ied] the court of the concurrent conflicts of interest . . . and [appeared] at the hearing upon short notice to answer the court's questions"); *McKinley*, 860 N.W.2d at 885–86 (determining no conflict of interest existed); *see also McKinley*, 860 N.W.2d at 892–93 (Waterman, J., specially concurring) (noting that one public defender's conflict should not be automatically imputed to another); *State v. Mulatillo*, 907 N.W.2d 511, 521 (Iowa 2018) (reversing district court order that disqualified defense counsel on prosecution's motion alleging conflict of interest that we found to be unsupported by substantial evidence); *State v. Iowa Dist. Ct. for Dubuque Cnty.*, 870 N.W.2d 849, 856–57 (Iowa 2015) (reversing district court order that disqualified prosecutor on alleged conflict grounds).

The district court also has a well-settled "duty of inquiry" to determine whether grounds exist to allow appointed counsel to withdraw. *State v. Miller*,

975 N.W.2d at 813–15 (addressing district court's duty of inquiry into a public defender's motion to withdraw to avoid an ethical violation); *State v. Wells*, 738 N.W.2d 214, 219 (Iowa 2007) (recognizing the court's duty of inquiry to determine whether substitute counsel is required due to an alleged breakdown in communication between the defendant and appointed counsel). Without any good reason, the majority eliminates the district court's duty of inquiry whenever the SPD asserts a temporary overload. Why? If the temporary overload exists, the SPD should have no problem proving it.

The majority offers only one reason for distinguishing between motions to withdraw based on a conflict of interest and motions based on a temporary overload. Without citing any authority, the majority asserts that the district court must decide the conflict ground because that determination involves a "mixed question of law and facts," while the court must defer to the SPD's assertion of a temporary overload because that involves "entirely a question of fact." That distinction makes no sense. Courts routinely decide fact questions as well as mixed questions of law and fact. Why tie the district court's hands on one but not the other?

In any event, the Alaska Supreme Court recently equated the public defenders' overload with conflicts of interest. *Off. of Pub. Advoc. v. Super. Ct.*, 566 P.3d 235, 246 (Alaska 2025) (determining that the public defenders' overload constituted a conflict of interest under ethical rules and stating that "[c]ourts must inquire when an apparent conflict of interest exists to ensure that the defendant receives conflict-free representation").

It is common practice nationally for the trial court to determine whether appointed counsel established grounds to withdraw. *See, e.g.*, *Riley v. Dist. Ct. in & for Second Jud. Dist.*, 507 P.2d 464, 465 (Colo. 1973) (en banc) (stating that

"counsel for an indigent defendant cannot withdraw without permission" of the court and noting that it is the defense counsel's burden "to prove to the court's satisfaction" the grounds to withdraw (second quoting *People v. Wolff*, 167 N.E.2d 197, 199 (Ill. 1960))); *In re Lovitt*, ___ N.W.3d ___, ___, 2024 WL 1588629, at *5 (Mich. Ct. App. Apr. 11, 2024) ("[T]he trial court may not permit the [appointed] attorney to withdraw without first determining whether the attorney has good cause to do so."); *Commonwealth v. Fortune*, 302 A.3d 780, 789 (Pa. Super. Ct. 2023) (affirming trial court's denial of a public defender's motion to withdraw over an alleged conflict the court rejected).

By eliminating the district court's duty of inquiry to decide whether grounds to withdraw were proven, the majority opinion is at odds with the great weight of authority in Iowa and nationwide.

**B. The District Court's Duty of Inquiry Is Not Obviated by the SPD's Claims of Confidentiality.** For the first time in its appellate reply brief, the SPD argues that determining overload involves questions of confidentiality, including, "how a particular attorney deals with stress and their general mental and physical health which may impact how many cases they can competently handle." It further asserts that "[s]uch things cannot or should not be known to the court, so it naturally follows that an assessment of whether an attorney is 'overloaded' cannot be made by the court."

We do not consider issues raised for the first time in a reply brief. *State v. Warren*, 955 N.W.2d 848, 867 (Iowa 2021) ("We generally will not consider issues raised for the first time in a reply brief in an appeal, let alone in an application for further review." (quoting *State v. Shackford*, 952 N.W.2d 141, 147–48 (Iowa 2020))); *Goodenow v. City Council*, 574 N.W.2d 18, 27 (Iowa 1998) (declining to address issue where plaintiffs did not raise issue "in their initial brief"). In any

event, the confidentiality argument is unpersuasive, and the majority does not rely on it.

In my view, the district court can and should explore whether the Davenport office is temporarily overloaded based on objective metrics, including by comparing: (1) the hours worked per attorney during the alleged overload to other time periods, (2) the hours worked by SPD's other offices or contract lawyers, and (3) the workload of similarly situated prosecutors. The district court likewise could inquire into the number of trials per attorney and the attorneys' individual caseloads. Many employers, including (we assume) the State of Iowa, perform studies from time to time to determine how busy certain offices are in order to determine how best to utilize their resources. This holistic inquiry would not delve into the confidential mental health status of individual staff attorneys.

### III. Separation of Powers Principles Require Affirmance.

Both the SPD and the majority get the separation of powers doctrine backward. Both would curtail judicial powers by effectively eliminating the court's role in determining whether the SPD proved a temporary overload to withdraw or avoid its representation of indigent defendants. Properly understood and applied, the separation of powers doctrine requires our court to affirm the district court's rulings denying the SPD's motions to withdraw.

It is a bedrock principle of American constitutional law that indigent defendants charged with crimes punishable by imprisonment are entitled to a state-supplied criminal defense lawyer at state expense. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). The State of Iowa, to meet its constitutional obligations, enacted legislation to create an office of the state public defender in the executive branch. *See* 1981 Iowa Acts ch. 23, § 2 (codified as amended at Iowa Code § 13B.2 (2024)). The SPD has the statutory duty to "coordinate the

provision of legal representation to all indigents," Iowa Code § 13B.4(1)(*a*), and through its local offices "shall handle every case to which [it] is appointed if [it] can reasonably handle the case," *id.* § 13B.9(3).

Constitutional challenges under the separation of powers are reviewed de novo. *State v. Basquin*, 970 N.W.2d 643, 651 (Iowa 2022). All three branches of state government have important roles to play in protecting indigents' constitutional right to counsel at state expense. The legislature enacted Iowa Code chapter 13B and appropriates funding annually for the SPD and contract lawyers for indigent defendants. 1981 Iowa Acts ch. 23; Iowa Code § 13B.6; Iowa Code § 815.7. The executive branch operates the SPD. Iowa Code § 13B.2. The judicial branch adjudicates cases and runs the court system. Iowa Const. art. V, § 1. The Iowa Constitution expressly vests the supreme court with "supervisory and administrative control" over all state courts. *Id.* art. V, § 4. "[S]ome acts can be properly entrusted to more than one branch of government, and some functions inevitably intersect." *Basquin*, 970 N.W.2d at 657 (alteration in original) (noting that the separation of powers "is not rigid" and "entrust[s] both the legislature and the judiciary with ensuring that the judicial branch functions and administers justice").

We must interpret chapter 13B and related statutes to comply with the Iowa and U.S. Constitutions. *See id.* at 657–58 (describing the scope of judicial power and separation of powers); *State v. Folkerts*, 703 N.W.2d 761, 765 (Iowa 2005) ("Courts have inherent power to protect a defendant's rights from being violated in a criminal proceeding."); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 85–86 (Iowa 2010) ("It is the responsibility of the judicial branch to ensure that indigents receive effective assistance of counsel as required by article I, section 10 [right to counsel]."). In *Simmons v. State Public Defender*, for example,

we construed section 13B.4(4) to strike down the SPD's administrative rule that had set a $1,500 per appeal hard-fee cap. 791 N.W.2d at 88. Today's case presents yet another chance for our court to interpret chapter 13B to ensure the elected branches honor their constitutional obligations to provide for indigent defense.

This case turns on the proper interpretation of Iowa Code chapter 13B. Under the separation of powers, statutory interpretation is plainly the role of the court. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

The majority opines that the constitutional avoidance doctrine supports its position giving the SPD a pass to avoid interfering with an executive branch agency. In my view, the constitutional avoidance doctrine cuts the other way, favoring the interpretation of chapter 13B that enforces the indigent defendant's right to counsel. *See Simmons*, 791 N.W.2d at 88 ("We are also confident that the legislature intended chapter 13B to implement Sixth Amendment rights."). That constitutionally mandated goal would be thwarted if the SPD could unilaterally withdraw from cases and avoid new cases through unsupported allegations of a temporary workload when no contract lawyers are available. We should construe the statute "to avoid potential constitutional infirmity." *Id.* The majority's interpretation creates greater constitutional problems than it solves.

**A. The District Court Did Not Intrude on the SPD's Internal Operations.** The SPD argues that the district court acted illegally by appointing Puentes by name in the six cases. It contends that assignment of cases within its local office is an exclusively executive function and that "[t]he court lacks any authority to designate the local office supervisor." Additionally, the SPD claims that Puentes has no statutory authority to reassign the cases within the

Davenport office once they are assigned to him. Finally, the SPD claims the court could not appoint Puentes by name because he is a government employee who cannot be appointed to the role of a private attorney. The SPD misreads the statute and the district court's orders.

Under the Code, the district court appoints defense counsel. Iowa Code section 13B.9(3) expressly provides that "[t]he local public defender shall handle every case to which the local public defender is appointed if the local public defender can reasonably handle the case." The same code section further provides: "The local public defender shall be responsible for assigning cases to individual attorneys within the local public defender office and for making decisions concerning cases in which the local public defender has been appointed." *Id.* And the district court orders expressly allowed Puentes or the SPD to appoint another public defender in his place. Therefore, Puentes could have reassigned the cases to other staff attorneys within the Davenport office if he chose to do so. The district court's orders do not run afoul of the Code.

The SPD notes that its staff attorneys are government employees who are not allowed to engage in private practice. True. But then the SPD misconstrues the district court's order as illegally appointing Puentes in a private counsel capacity in the six criminal cases. That's not what the district court did. Rather, the orders expressly appointed Puentes in his capacity as "Chief Public Defender in the Davenport office," not as a private attorney.

Before appointing Puentes, the district court waited for a staff attorney in the Davenport office to file an appearance in response to any of its multiple orders appointing that office—none did. The court waited until the SPD had an opportunity to respond to its December 6 order that required SPD attorneys to file individual appearances in the cases—those appearances never came. And

still the district court waited until after it filed an order warning that Puentes would be named *if* no other attorney from the office appeared—no attorney ever appeared. Puentes is the supervising attorney of the Davenport office. He filed the motions to withdraw. The orders appointing him expressly provided that Puentes could reassign the cases to other staff attorneys. The district court thereby left intact the SPD's discretion to pick which staff attorney handles which case. There was no violation of chapter 13B or the separation of powers.

**B. The Majority Needlessly Relinquishes Judicial Power.** As explained above, under a correct reading of the statute and our precedent, it is the district court that decides whether grounds exist for the SPD to withdraw from cases. The majority opinion cedes the court's responsibilities and allows the SPD to decide the overload question unilaterally. The majority inconsistently argues that the district court can't decide whether the SPD has a temporary overload because: (1) it is a political question without standards for the court to apply, citing *Baker v. Carr*, 369 U.S. 186, 226 (1962), for the proposition "that courts will not 'enter upon policy determinations for which judicially manageable standards are lacking'" (quoting *id.*)); and (2) because it is a purely factual question. Neither argument is convincing.

1. *Determination of whether a temporary overload exists is not a nonjusticiable political question.* By characterizing the determination of whether the SPD has a temporary overload as a nonjusticiable political question, the majority makes a serious mistake. No other court has reached that conclusion. The majority takes out of context this passage from the district court's rulings:

> The Court is unaware of the caseload of the public defender's office, per attorney, prior to . . . being fully staffed as compared to the current caseload now that full staffing has occurred. The Court does not know the ideal caseload per attorney nor the maximum caseload

per attorney. The Court is unaware of the methodology for arriving at the ideal or maximum caseload.

Read in context, the district court was stating that the SPD, by providing no information, failed to prove that it was in fact temporarily overloaded, not that no court could decide that as an inherently political question. Today's case is nothing like *Baker*, where the Supreme Court declined to review Tennessee's congressional reapportionment plan, 369 U.S. at 187–88, nor does it resemble the other cases the majority cites for the political question doctrine: *King v. State*, 818 N.W.2d 1, 4, 17–18 (Iowa 2012) (declining to adjudicate dispute over control of public education), and *Des Moines Reg. & Trib. Co. v. Dwyer*, 542 N.W.2d 491, 494–95 (Iowa 1996) (en banc) (declining to require release of senate phone records).

2. *Determination of the SPD's temporary overload involves questions of fact that the district court can decide.* In my view, the judiciary is obviously the branch of government to decide whether the public defender is overloaded. The majority aptly cites the Iowa Rules of Professional Conduct that require lawyers (including public defenders) to be competent (including adequate preparation), diligent, and prompt, as well as those imposing a duty to avoid conduct prejudicial to the administration of justice. *See Off. of Pub. Advoc.*, 566 P.3d at 246 (referencing ethical rules in determining case overload). Those duties compose the day-to-day practice of law in our courts, and supervising their execution is well within a district court's wheelhouse and our court's purview. After all, courts oversee and regulate the practice of law. *See* Iowa Code § 602.10101 *et. seq.*

If the Davenport office had too many cases to allow for competent representation or adequate time to prepare, it should have provided evidence to support that claim. Standards exist to help determine how many cases are too

many.[6] The district associate judge who issued the rulings under review was herself a public defender before she went on the bench. Officially promulgated caseload limits in Iowa are not required to permit the district court to direct the SPD to set a hearing and make an evidentiary record as to its alleged overload.

The majority short-circuits the proceedings below by simply allowing the SPD to withdraw without proving its overload exists. A well-developed record would permit the district court and reviewing courts to evaluate claims of overload and determine whether the alleged overload is temporary or permanent. The SPD's appellate briefing nowhere disputes the district court's finding that the Davenport office is fully staffed. So why is the Davenport office now seeking to withdraw or return cases when it didn't do so before? What changed? Are the staff attorneys working the same number of hours per week as the private attorneys they would like to have replace them? How does the caseload per staff attorney compare to private contract attorneys? To prosecutors? What about other SPD local offices that have never claimed a temporary overload? The district court should be permitted to explore those issues. And an evidentiary record would help the legislature evaluate the need to increase funding for indigent defense.

The majority accurately observes that some of our rules of procedure expressly allow parties to act without court approval:

> Yet, when an action does not need court approval, we often see language making that point clear. *See, e.g.*, [Iowa R. Civ. P.] 1.943 ("A party may, *without order of court*, dismiss that party's own

---

[6]*See, e.g.*, Nicholas M. Pace, Malia N. Brink, Cynthia G. Lee, Stephen F. Hanlon, *National Public Defense Workload Study*, Rand. Corp. ix–xi (2023) [hereinafter NPDWS] (surveying various workload guidelines and standards for criminal defense counsel and proposing new standards), https://www.rand.org/content/dam/rand/pubs/research_reports/RRA2500/RRA2559-1/RAND_RRA2559-1.pdf [https://perma.cc/KPS4-R89Y]; M. Eve Hanan, *Public Defender Workload and the Promise of* Gideon, 33 Nev. Law. 8, 8 (2025) (describing the NPDWS "as a starting point for jurisdiction-specific workload standards").

petition . . . ." (emphasis added)); *id.* r. 1.972(1) ("If a party . . . is in default under rule 1.971(1) or 1.971(2), the clerk shall enter that party's default in accordance with the procedures set forth in this rule *without any order of court.*" (emphasis added)).

The phrase "without order of court" appears nowhere in Iowa Code section 13B.9(4)(*a*). If the legislature wanted to permit the SPD to withdraw unilaterally without court approval, then it would have said so by adding "without order of court" or equivalent language. It said no such thing here. "We are not at liberty to rewrite the statute." *Marek v. Johnson*, 958 N.W.2d 172, 177 (Iowa 2021). Yet the majority today effectively amends the statute in the guise of interpretation to remove the court's role in determining whether a temporary overload exists.

The majority begrudgingly suggests the district court could push back only if "the court has reason to believe that the local public defender misrepresented its office's caseload." I won't impugn the motives of a harried public defender who may simply be following orders in asserting that the Davenport office is overloaded. But if the majority is reading a new bad-faith misrepresentation standard into section 13B.9(4)(*a*), why not remand the case to let the district court apply it first? After all, as the district court noted, the Davenport office recently became fully staffed. *See, e.g.*, *Off. of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 24 (Iowa 2012) (holding that district court acted within its discretion to order deposition of administrative law judge upon showing of bad faith sufficient to overcome mental process privilege).

In my view, the district court had discretion to ask the SPD for more information about its alleged temporary overload, and to require proof from the SPD before granting its motions to withdraw. Other courts have rejected separation of powers challenges to far more intrusive judicial oversight over

public defenders. *See, e.g., Off. of Pub. Advoc.*, 566 P.3d at 246–47 (rejecting separation of powers challenge to trial court's appointment of executive branch Office of Public Advocacy to represent indigent defendant); *Tucker v. State*, 394 P.3d 54, 71–72 (Idaho 2017) (determining that separation of powers doctrine did not preclude judicial review of indigent defendants' pre-conviction systemic challenge to constitutionality of allegedly inadequate public defender office and stating that "[t]he right to counsel, which Appellants seek to vindicate, is not entrusted to a particular branch of government"); *Lavallee v. Justices in Hampden Sup. Ct.*, 812 N.E.2d 895, 911 (Mass. 2004) (addressing systemic challenge by indigent criminal defendants and requiring dismissal of criminal charges if counsel not appointed within prescribed deadlines); *Comm. for Pub. Couns. Servs. v. Middlesex & Suffolk Cnty. Dist. Cts.*, No. SJ–2025–0244, 2025 WL 2048501, at *7 (Mass. July 3, 2025) (invoking *Lavallee* protocols requiring pretrial release or dismissal of charges if defense counsel is not appointed within prescribed deadlines); *State v. Young*, 172 P.3d 138, 142–43 (N.M. 2007) (staying death penalty cases pending increased funding from legislature for the indigent defense counsel and collecting cases); *Hurrell-Harring v. State*, 930 N.E.2d 217, 227 (N.Y. 2010) (holding that systemic challenge to efficacy of public defender office was justiciable and remanding for further proceedings and stating that "[i]t is, of course, possible that a remedy in this action would necessitate the appropriation of funds and perhaps, particularly in a time of scarcity, some reordering of legislative priorities" but noting that "this does not amount to an argument upon which a court might be relieved of its essential obligation to provide a remedy for violation of a fundamental constitutional right"); *Davison v. State*, 466 P.3d 231, 295–96 (Wash. 2020) (en banc) (recognizing judicial authority to adjudicate class action challenge alleging systemic deficiencies in

indigent defense and stating that "[t]he State's obligation to safeguard the right to counsel therefore does not rest solely with the legislature, executive, or judiciary[;] [t]he State shares that responsibility among its various branches"); *see also Betschart v. Oregon,* 103 F.4th 607, 613, 628 (9th Cir. 2024) (affirming injunction ordering pretrial release of unrepresented indigent defendants and stating that "[i]t is Oregon, and not the district court, that created this crisis"); *Farella v. Anglin,* 346 F.R.D. 92, 102 (W.D. Ark. 2024) (certifying class action of pretrial detainees alleging constitutional violations for lack counsel at bond hearings).

As these cases demonstrate, courts are not powerless to protect the constitutional rights of indigent defendants facing potential loss of liberty.

**IV. The SPD's Davenport Office Should Not Be Viewed in Isolation.**

The majority errs by viewing the Davenport office in isolation. As both the SPD and district court judges in Davenport are well aware, staff attorneys from other offices previously have been assigned to defend Scott County cases. In Eastern Iowa, the SPD has local offices in Cedar Rapids (a seventy-five-minute drive from the Scott County Courthouse in Davenport), Dubuque (a seventy-two-minute drive), and Burlington (a ninety-minute drive). And many pretrial hearings can now be conducted by Zoom, which makes it easier for public defenders from offices outside of Scott County to represent indigent defendants there. The other local offices to date have not claimed temporary overloads. The SPD has a statutory duty to coordinate indigent defense statewide. Iowa Code § 13B.4(1)(*a*). As the majority recognizes, the SPD has the statutory authority to designate other local offices for appointment to Scott County cases. *See id.* § 13B.9(4)(*a*) ("As used in this subsection, '*successor designee*' may include

another local public defender office."). So why doesn't the SPD direct its nearby local offices to help its Davenport office?

It is hornbook law that a party cannot escape a legal duty by unreasonably causing the condition that excuses its performance. *See State v. Beres*, 943 N.W.2d 575, 583 (Iowa 2020). If the SPD fails to take reasonable measures to avoid a temporary overload, it should remain obligated under section 13B.9(3) to continue its representation of indigent defendants. The SPD certainly has the authority to assign Scott County cases to its other local offices. It has done so in the past. The SPD could hire more attorneys for its Davenport office. Contract lawyers are available for class "A" felonies in Scott County. The SPD could allow available contract attorneys to defend class "A" felonies in Scott County, freeing up time for its staff attorneys to defend lesser felony and misdemeanor cases for which no private contract lawyers are available. The SPD could seek additional funding from the legislature to raise hourly rates for contract attorneys. The SPD should not be allowed to avoid its statutory and constitutional obligations merely on the strength of its own predilections.

An evidentiary record would allow the district court to compare the workload of the local public defender's staff attorneys to the workload of prosecutors and private contract attorneys. And an evidentiary record is needed before the court can properly determine whether the alleged overload is temporary, as required under the Code. That inquiry will necessarily entail a comparison of the SPD staff attorney workloads at different times and in different local offices.

**V. Is this a Temporary or Permanent Overload?**

Because the SPD did not accept the district court's repeated invitations to make an evidentiary record, we cannot tell whether the alleged overload is

temporary or permanent. Given that the SPD's Davenport office was "fully staffed," this overload, if it exists, appears to be permanent. But the statute allows withdrawals only for *temporary* overloads.

Section 13B.9(4)(*a*) does not create a mechanism to appoint private attorneys to handle the SPD's permanent overload. That solution must come from the politically accountable elected branches. *See Betschart*, 103 F.4th at 613, 628 (9th Cir. 2024) (affirming class certification and preliminary injunction requiring pretrial release from jail of unrepresented indigent defendants). The United States Court of Appeals for the Ninth Circuit aptly observed, "Oregon could solve this problem overnight simply by paying appointed counsel a better wage." *Id.* at 628. The same is true in Iowa.

Underfunding indigent defense now will only lead to greater costs later. More indigent defendants will claim they received ineffective assistance of counsel from allegedly overworked or incompetent defense counsel, requiring more rounds of litigation necessitating more court-appointed counsel, and in some cases, new trials on the same charges. The legislature has already pushed ineffective-assistance-of-counsel claims to postconviction proceedings, resulting in "inordinate delays." *See State v. Young*, No. 23–1924, 2025 WL 1452559, at *9 (Iowa Ct. App. May 21, 2025) (Tabor, C.J., specially concurring). The SPD's appellate division has recently moved to withdraw from some postconviction appeals, citing its own overload of cases. Only three contract attorneys are available for postconviction cases in Scott County, Iowa's third most populous county. *See Ruiz v. State*, No. 24–0085, 2024 WL 3887241, at *3 n.5 (Iowa Ct. App. Aug. 21, 2024) (Tabor, C.J., dissenting). And we have already seen a substantial jury verdict in a legal malpractice action against the State, finding that an overworked public defender's errors led to the wrongful conviction and

imprisonment of an innocent man. *See Clark v. State*, 7 N.W.3d 740, 748, 755 (Iowa 2024) (discussing $12 million jury award against the State but remanding for new trial due to instructional error).

District courts could let the SPD pause incoming appointments or withdraw from cases if contract lawyers were available as replacements. At today's hourly rate, too few private attorneys are available. This is a money-solvable problem.

**VI. The SPD Failed to Show the District Court Abused Its Discretion.**

We review rulings on motions for substitute counsel for abuse of discretion. *Mulatillo*, 907 N.W.2d at 517–18; *State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995) (noting that district court has substantial discretion). As I see it, the district court acted within its discretion in denying the SPD's unsupported motions to withdraw or return the cases when no contract attorneys were available. Allowing the SPD to withdraw inevitably would delay resolution of the six cases and deprive the defendants of their constitutional right to counsel. The SPD has not shown that the district court abused its discretion. I would affirm on that ground.

The SPD wanted the district court to appoint *unwilling* private attorneys in its place under Iowa Code section 815.10(3), which provides: "If the court determines that no contract attorney is available to represent the person, the court may appoint a noncontract attorney. The order of appointment shall include a specific finding that no contract attorney was available." The district court found that no contract attorneys were available for appointment to these six cases. The SPD does not dispute that factual finding but contends that the district court was then *required* under section 815.10(3) to appoint unwilling

private attorneys from among the 200 licensed attorneys in Scott County. But the statute requires no such thing.

Section 815.10(3) uses the permissive term "may," which textually allows but does not require the district court to appoint a noncontract lawyer. *See* Iowa Code § 815.10(3) ("If the court determines that no contract attorney is available to represent the person, the court *may* appoint a noncontract attorney." (emphasis added)); *State v. Iowa Dist. Ct. for Woodbury Cnty.*, 989 N.W.2d 652, 656 (Iowa 2023) ("The legislature has directed that, unless otherwise specified, its use of the word 'shall' in a statute 'imposes a duty' that is mandatory, while its use of 'may' only 'confers a power' that is discretionary." (quoting Iowa Code § 4.1(30)(*a*), (*c*) (2021))).[7]

The district court reasonably exercised its discretion to refrain from appointing unwilling private attorneys to these criminal cases at the state's 2024 hourly rate of seventy-six dollars. Iowa Code § 815.7(9) (2025). Unwilling private attorneys probably would file their own motions to withdraw, on grounds that they are not competent to try criminal cases or would suffer financial hardship if required to take time away from their own more lucrative workload, the only way they can cover payroll and overhead costs at their law firms. *See* Iowa R. of Prof'l Conduct 32:1.1 (duty of competence); *id.* r. 32:6.2 (allowing lawyer "to avoid appointment by a tribunal . . . for good cause, such as" when "representing the client is likely to result in violation of the Iowa Rules of Professional Conduct" or impose "an unreasonable financial burden on the lawyer"). As Abraham Lincoln

---

[7]The SPD tacitly recognizes that section 815.10(3) does not impose a mandatory duty to appoint unwilling private attorneys because the SPD has now proposed legislation to change "may" to "shall" in that statute. *See* S.F./H.F. ___, 91st G.A., 2d Sess. (Iowa 2026) (pre-filed bill, LSB 5354XD), https://www.legis.iowa.gov/docs/publications/BP/1544366.pdf [https://perma.cc/V7AV-EW2R]

is credited with saying: "A lawyer's time is his stock in trade." Fred R. Shapiro, *The Oxford Dictionary of American Legal Quotations* 257 (1993).

Legal malpractice insurers exclude coverage or charge higher premiums for criminal defense work. Law firms do not want their lawyers to take on the liability and reputational risks of bad outcomes in cases outside their expertise. And even if the private lawyer saw the case through to a verdict or plea, the defendant could, in postconviction proceedings, argue that his lawyer's inexperience amounted to ineffective assistance of counsel. The SPD has not shown that the district court abused its discretion by failing to appoint an unwilling private attorney under section 815.10(3).

In any event, after today's majority opinion, the district court effectively must rubber-stamp motions to withdraw when the appointed lawyer says that the lawyer isn't competent or that the appointments impose an unreasonable financial burden. If the district court must accept the SPD's claim of a temporary overload, it is reasonable to assume that the court will afford private lawyers the same grace in granting their motions to withdraw.

The record does not show how many of the lawyers licensed in Scott County have any experience practicing criminal law specifically, or courtroom experience generally. Fifteen years ago, in *Simmons*, we noted that the State cannot meet its obligation to provide indigent defense counsel by relying on private lawyers donating their time, stating:

> [T]he notion that the state's obligations can be satisfied indirectly through attorneys volunteering their time and effort arise from the days when a criminal trial was not a long and complicated affair and any generally trained lawyer could step in and handle a case or two without substantial financial sacrifice. Those days have long passed as the criminal law has increased in complexity, and the cost of operating a law office has risen dramatically.

791 N.W.2d at 86. That observation lands with even greater force today. To its credit, the majority opinion does not argue that "the district court should have appointed private attorneys to take on a criminal case."

The majority opinion correctly recognizes that we are facing a crisis in indigent defense. The declining number of attorneys willing to undertake court-appointed criminal defense cases in Iowa courts is a growing problem statewide in urban and rural counties alike. According to the Legislative Services Agency, the number of private attorneys with contracts with the SPD declined by more than half from 1,018 in 2015 to approximately 500 in 2024. Legis. Servs. Agency, Fiscal Servs. Div., *Public Defenders and Contract Attorneys* 1 (2025), https://www.legis.iowa.gov/docs/publications/FTNO/1463204.pdf [https://perma.cc/4V5B-6QK5]. "The decrease in attorneys accepting court appointments has created a crisis in some areas of the state, particularly Scott and Cerro Gordo Counties" and is attributable in part to "the low rate of compensation" paid by the SPD. Letter from Iowa State Bar Ass'n 1 (Jan. 3, 2025), https://www.iowabar.org/docdownload/2559033&lang=en [https://perma.cc/V6B3-KKYY]. "According to the most current ISBA economic survey, the average overhead costs of operating a law office in Iowa are over $80 per hour." *Id.* at 2. Yet the SPD in 2024 paid only $76 per hour for defending class "C" and "D" felonies and all misdemeanors. Iowa Code § 815.7(9). The legislature increased that hourly rate by two dollars effective July 1, 2025. 2025 Iowa Acts ch. 154, § 20 (codified at Iowa Code § 815.7(10) (2026)). The shortage of willing lawyers is especially acute in Scott County, where criminal defense lawyers can receive $150 per hour over the bridge in Rock Island, Illinois, or $170 per hour defending cases in Davenport's federal court. Scott County is the canary in the coal mine for Iowa's indigent defense crisis.

The district court in its discretion did not attempt to appoint any unwilling private attorney to represent the indigent defendants because the court found that the SPD failed to prove the threshold requirement for its withdrawal: that it is temporarily overloaded. The SPD acknowledges that it offered no evidence to prove its overload. Iowa Code § 13B.9(4)(*a*). That failure of proof should be dispositive.

As the majority recognizes, the district court has discretion to dismiss criminal cases when the state executive branch fails in its constitutional duty to provide counsel for indigent defendants through the SPD and no contract attorneys are available at the state's hourly rates. The same Scott County district court judge has already dismissed an OWI, Second Offense, case on those grounds in a nine-page ruling entered August 15, 2025. *State v. Wallace*, No. OWCR449261 (Iowa Dist. Ct. Scott Cnty. Aug. 15, 2025) [https://perma.cc/6JXA-UGLV]. We can expect many more such dismissals unless and until the State adequately funds indigent defense.

The majority allows the SPD to win this round in the ongoing battle over limited resources appropriated by the legislature for indigent defense. The immediate losers are the six indigent defendants deprived of representation and the backlogged Associate District Court for Scott County. But viewed through a wider lens, the losers will be the people of Iowa as public safety erodes because courts are forced to dismiss more criminal charges. Prosecutors will soon need to triage which cases to charge. Accused criminals lack lobbying power at the statehouse. In the future, the legislature may hear from prosecutors and law enforcement as to the need to increase funding to meet the state's constitutional obligation. Stay tuned.

For these reasons, and for those stated in Justice Mansfield's dissent, I respectfully dissent from today's opinion reversing the district court's rulings that upheld six indigent defendants' constitutional right to counsel.

Christensen, C.J., and Mansfield, J., join this dissent.

**Mansfield, Justice (dissenting).**

I join Justice Waterman's dissent. District courts have both statutory and constitutional obligations to review a public defender office's claims of a "temporary overload" as the basis for withdrawing indefinitely from a category of cases—particularly when there is no one else available to take over. *See* Iowa Const. art. I, § 10; Iowa Code § 13B.9(4)(*a*) (2024). I wish to add only a few observations.

### I. The Majority Opinion Contradicts Itself.

First, the majority opinion is self-contradictory at its core. From the outset, the majority informs everyone that there is "an indigent defense crisis" and "it is getting worse." In other words, we have a permanent problem in Iowa. Yet the majority claims that there is no way for a district court to determine whether a fully-staffed public defender office that wants to stop taking certain cases indefinitely is suffering from a "temporary overload." It seems to me the majority has already rebutted this claim at the beginning of their opinion. Whatever overload exists, it is certainly not temporary.

The majority cannot claim that district courts are unable to diagnose what they have already diagnosed in the introduction to their opinion.

### II. Separation of Powers Is Not at Issue.

Second, the majority's "separation of powers" concerns are misguided and overblown.[8] As Justice Waterman's dissent points out, the doctrine of separation of powers favors *affirmance* of the district court's orders.

---

[8]Notably, the State Public Defender's briefs do not raise a separation-of-powers argument; this is completely the majority's brainstorm.

Consider the position of the attorney general's office. We should expect the attorney general's office to vigorously defend Iowa's constitutional paradigm, including the separation of powers. Yet that office is representing *the district court* in this matter, and advocating *the district court's* position, not the position of the State Public Defender (SPD).

The majority's separation of powers argument loses steam as soon as you look at the one public defender case they have cited—*Office of Public Advocacy v. Superior Court, First Judicial District* (*OPA*), 566 P.3d 235 (Alaska 2025).

*OPA* arose when a trial court grew concerned about the adequacy of representation being provided by a local public defender office to a number of clients. *Id.* at 238. The court ordered the office to withdraw from a case for which the office declined to appoint a specific public defender attorney. *Id.* It appointed a different legal arm of the executive branch—the Office of Public Advocacy—to represent that defendant. *Id.* On appeal, the Alaska Supreme Court overruled the public defender's and the OPA's objections to this procedure, concluding that "[b]ecause the court had a duty to ensure [the defendant's] rights were protected, it did not violate the separation of powers doctrine by [ordering the Agency to withdraw and appointing the OPA]." *Id.* at 247.

The point is the same here: the court system has a constitutional obligation to see that criminal defendants receive adequate representation. *See* Iowa Const. art. I, § 10. Fulfilling that obligation does not encroach on the executive branch's role; it's part of the judiciary's job. When no available alternative exists, as it doesn't in Scott County, the district court is entitled at a minimum to hold the local public defender office to what the statute requires: the existence of a "temporary overload" before the local office may withdraw.

Apart from the constitutional imperative, under Iowa's laws, both the executive branch and the judicial branch play roles in indigent defense. For example, district courts—not the SPD—must review and approve the use of experts and investigators by SPD contract attorneys, even though the SPD foots the bill. *See* Iowa Code §§ 815.1(1), .5. District courts must decide if attorneys have "good cause" to exceed presumptive fee limitations. *Id.* § 815.10A(3)(*a*). No one contends that this level of involvement violates the separation of powers, intrudes on SPD prerogatives, infringes the attorney–client privilege, or is beyond the competence of district courts.

Other than the fact that the Governor appoints the State Public Defender, there is also no inherent reason why the SPD should be considered part of the executive branch. This wasn't decreed by Montesquieu. *See* Charles de Secondat, Baron de Montesquieu, *The Spirit of Laws* 215–31 (Thomas Nugent trans., 3d ed. 1758) (1748) (discussing the separation of powers).[9] Public defenders aren't administering the laws; they are contesting efforts to enforce them.

Indeed, in the federal government, federal public defenders and the rest of federal indigent defense fall within the *judicial* branch. *See* 18 U.S.C. § 3006A. If it doesn't violate separation of powers to have *all* of indigent defense supervised by the judicial branch, as federal law provides, I fail to see how it violates separation of powers for the judicial branch to have a *partial* role, as decreed by Iowa law, including Iowa Code section 13B.9(4)(*a*).

---

[9]Moreover, separation of powers does not mean that the branches of government have no say over each other's operations. In Federalist No. 47, James Madison explained that Montesquieu's view of separation of powers "did not mean that these departments ought to have no *partial agency* in, or no *control* over the acts of each other."

### III. The Majority's Assurances Are Not Reassuring.

Finally, at the end of the opinion, the majority tries to soften the blow with a series of assurances. For example: "This is not to say . . . ." and "What we are not deciding." I derive no comfort from the majority's assurances because they rest on insubstantial distinctions, are contrary to the very logic of the majority opinion, or may be displaced by forthcoming events.

For example, the majority seeks to assure us that merely checking a box and claiming "temporary overload" is not enough. Instead, in order to withdraw, the public defender office needs to go just slightly further and add the following words: "The public defender . . . after consideration of all applicable factors including the number of attorneys in the office and caseloads, has determined they are . . . ethically unable to handle this case." I do not see this as a meaningful distinction. Boilerplate is still boilerplate, whether it's two words or a full sentence.

Next, the majority says that the district court would be "well within its discretion" to reject the return of a case if the public defender office claimed to be overloaded because the entire office was going on vacation. But how would the district court know this, because the majority holds that once the magic words are uttered, the district court cannot even make an inquiry?

Additionally, the majority reiterates that their decision does not address "overloads in public defender offices that reach a level of permanency." But again, how would the district court know whether an overload is temporary or permanent if it can't inquire? It certainly appears as if the situation in Scott County is permanent.

Lastly, the majority seeks to reassure us that its decision does *not* mean unwilling private attorneys will be forced to represent criminal defendants at the

low hourly rates allowed by Iowa law. *See* Iowa Code § 815.7(10) (2026) (authorizing rates of $78 to $88 per hour). The majority highlights that it is *not* "suggest[ing] that the district court should have appointed unwilling private attorneys to take on a criminal case" and notes that a district court's declining to do so would be "within the district court's broad discretion." *See* Iowa Code § 815.10(3) (2024) ("If the court determines that no contract attorney is available to represent the person, the court *may* appoint a noncontract attorney." (emphasis added)).

However, the majority fails to note that the SPD has pre-filed a bill for the 2026 legislative session to eliminate this possibility. *See* S.F./H.F. ___, 91st G.A., 2d Sess. (Iowa 2026) (pre-filed bill, LSB 5354XD), https://www.legis.iowa.gov /docs/publications/BP/1544366.pdf [https://perma.cc/V7AV-EW2R]. The SPD's proposed legislation would require district courts to appoint unwilling attorneys by changing the "may" in Iowa Code section 815.10(3) to "shall." *Id.* The bill explanation states,

> Current law provides that if no contract attorney is available for appointment by the court, the court may appoint a noncontract attorney.
>
> The bill provides that if the court determines that no contract attorney is available to represent the person, the court is required to appoint a noncontract attorney.

*Id.*

If this bill became law, there would obviously be much to sort out. But it's important to appreciate the magnitude of what the SPD is proposing. The state government would be forcing individuals to provide services to the state on terms they are not voluntarily willing to accept. Consider where this could lead. If lawyers were first, who would be next? Would the state government do the same with Medicaid, mandating that unwilling physicians and dentists accept

Medicaid patients at whatever reimbursement rate the state government chose to offer?

For the reasons set forth in Justice Waterman's dissent, and those set forth above, I respectfully dissent.

Christensen, C.J., and Waterman, J., join this dissent.